## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:25-CR-00308-MSN |
| | ) | |
| ASHLEY J. TELLIS | ) | |
| | ) | |
| *Defendant*. | ) | |

### GOVERNMENT'S OPPOSITION TO MOTION TO MODIFY CONDITIONS OF RELEASE (Dkt. 74)

The United States opposes Defendant's Motion to Modify Conditions of Release to allow the Defendant to leave his home during the hours of 8:00 a.m. to 8:00 p.m.  Dkt. 74.  The Defendant's motion should be treated as a motion to reopen the detention hearing, which requires material information not known to the movant at the time of the hearing.  Because the Defendant has not provided new and material information, the motion may be denied on that basis alone.   Beyond that threshold question, the Defendant has also on multiple occasions acknowledged that the conditions of release currently in effect are appropriate pursuant to 18 U.S.C. § 3142.  Moreover, while the Government's Motion to Reopen Detention was denied, *see* Dkt. 48, the concerns articulated by the Government in that motion and during argument on that motion have not abated, *see* Dkt. 33.  The Defendant's new request for substantially more lenient bail conditions elides the risks inherent in allowing the Defendant to move freely around the Washington, D.C.-area for a twelve-hour period per day.   As such, the Motion to Modify Conditions of Release should be denied.

### I.       The Defendant's Motion Should be Treated as a Motion to Reopen Detention

The Defendant has styled his motion as a motion to modify conditions of release pursuant to 18 U.S.C. § 3142(c)(3), which states that "[t]he judicial officer may at any time amend the order [of pretrial release] to impose additional or different conditions of release."  But a request for the district

1

court to amend an order setting conditions of release is akin to asking the court to "act[] *de novo* and [] make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (citing *United States v. Reuben*, 974 F.2d 580, 585-86 (5th Cir. 1992)).  While there is a "dearth of case law from [] the Fourth Circuit Court of Appeals addressing a defendant's motion to review an order setting conditions of release," *United States v. Blankenship*, Crim. Action No. 5:14-cr-00244, 2015 WL 1565774, at *3 (S.D.W. Va. Apr. 8, 2015), other districts have treated such an ask for review of release conditions as a request to reopen the detention hearing, *see, e.g.*, *United States v. Ebonka*, 733 F. Supp. 3d 967, 969 (D. Nev. 2024) ("Courts have routinely held that a motion to modify conditions of pretrial release amounts to a motion to reopen the detention hearing" and citing cases); *see also United States v. Esposito*, 354 F. Supp. 3d 354, 358 (S.D.N.Y. 2019) (treating request to modify pretrial condition requiring defendant to pay for an armed guard stationed outside of his home as a motion to reopen detention); *United States v. Johnson*, Crim. No. 2:21-cr-00707-WJM, 2022 WL 375319, at *2 (D.N.J. Feb. 8, 2022) (stating that "broad authority to amend conditions of pretrial release provided in Section 3142(c)(3) must be read in conjunction with the more circumscribed authority to reopen bail hearings on the basis of new information set forth in Section 3142(f)" and citing cases in support).  Any other approach "would lead to absurd results, including that a defendant could file endless petitions to modify his conditions." *Ebonka*, 733 F. Supp. 3d at 969 (internal quotation marks and citations omitted).

To reopen a detention hearing under 18 U.S.C. § 3142(f)(2), a movant must establish "that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  Defendant asks to reopen the detention hearing and amend his release conditions because he has complied with the conditions of release imposed to date, and because trial is set in this matter in ten months' time.  *See* Dkt. 74 at 1-2.

The reasons offered by the Defendant are not new information material to the question of detention. Compliance with current conditions of pretrial release "is not new information that has a material bearing on [] conditions to reopen the detention hearing." *United States v. Kube*, No. 1:19-cr-00257-NONE-SKO, 2020 WL 1984178, at *5 (E.D. Cal. Apr. 27, 2020); *see Ebonka*, 733 F. Supp. 3d at 969-70 (citing additional cases holding the same); *United States v. Faria*, Crim. No. 24-084 (GMM), 2024 WL 4706765, at *5 (D.P.R. Nov. 7, 2024) (stating that "the case law indicates that a defendant's compliance with the current conditions of pretrial release is not in and of itself grounds to modify those conditions"). Similarly, alleged inconvenience of pretrial release conditions, including the amount of time a defendant must comply with them, does not meet the requirements to reopen a detention hearing. *See, e.g.*, *United States v. Ross*, No. 3:23-CR-128-TAB-JEM, 2024 WL 1890087, at *4 (E.D. Tenn. Apr. 30, 2024) (holding that length of time under which defendant must comply with pretrial release conditions is not material under Section 3142(f)(2) and citing cases in support). That stands to reason, because the length of a person's *detention* is also not considered material information for the Section 3142(f)(2) analysis. *See United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989) (stating that "current or potential future detention" cannot "be considered under this section since it is not material to the issue of risk of flight or dangerousness"); *United States v. Bowers*, Case No. 1:24-cr-00039-MJM, 2024 WL 4149845, at *1-2 (D. Md. Sept. 10, 2024) (denying motion to reopen based on length of detention and stating that it "is not explicitly one of the factors cited by the Bail Reform Act as directly pertinent to the issue of detention or release"). The Defendant has not propounded information previously unknown that has a material bearing on the issue of detention and, for that reason, his motion should be denied.

## II. The Defendant Has Continuously Acknowledged that the Current Bail Conditions Are Appropriate to Comply With 18 U.S.C. § 3142(f)

In all bail hearings to date, defense has taken the position that the conditions currently in effect are appropriate to comply with the requirements of 18 U.S.C. § 3142. Contrary to those earlier proclamations, Defendant's newfound belief that the bail conditions are too onerous asks the Court to

3

ignore the seriousness of the Defendant's alleged conduct and risks to the community and of flight.

In October 2025, the Defendant agreed to conditions of release that included home detention and location monitoring technology as directed by pretrial services or the supervising officer. Dkt. 22. Those conditions included the standard language on every Order Setting Conditions of Release (AO199A) that the Defendant would be "restricted to his residence at all times except for employment; education; religious services; medical, substance use, or mental health treatment; attorney visits; court appearances; court-ordered obligations; activities approved by the court; or essential activities approved in advance by the pretrial services office." *Id.* at 2. They also stated that the Defendant would "refrain from possessing or having access to a computer or the internet unless a computer monitoring program has been installed by Pretrial Services" and "refrain from possession or utilizing . . . phones with internet capabilities, or other such devices which would enable contact and/or sharing of data with other individuals known or unknown to the defendant unless a computer monitoring program has been installed by Pretrial Services." *Id.* at 3. The computer monitoring software "may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, internet use history, email correspondence, and chat conversations." *Id*.

The Defendant again re-stated his belief that the strict bail conditions of home detention and electronic location monitoring were appropriate in briefing the following month. In November 2025, the Government moved to re-open detention for the Defendant to be detained pending trial. *See* Dkt. 33. In its opposition to the Government's Motion to Reopen, the Defendant argued that he should not be detained but rather that he "should remain released pending trial under the same, continuing conditions," which included home detention and electronic monitoring. *See* Dkt. 45 at 20. The Defendant continued:

> The defense does not intend to downplay the seriousness of the charges against Dr. Tellis. In fact, the conditions of release on which the parties agreed are strict, in recognition that the government had concerns to be addressed. As the Court is aware, the conditions include home confinement

under electronic surveillance, no passport or travel outside the D.C. area, and no access to any devices connected to the internet, among others. *See* ECF No. 22. Dr. Tellis has taken these conditions seriously and complied meticulously with each.

Dkt. 45 at 26. The passage of four months' time should not change the conditions of release that the Defendant has repeatedly agreed to.[1]

### III.   The Defendant Remains a Flight Risk and Danger to the Community and to Others

Finally, the Defendant remains a flight risk and danger to others and the community for the reasons that the Government detailed in its November 18, 2025, Motion to Reopen Detention. *See* Dkt. 33. The concerns that prompted the Government to file that motion have not abated.

As stated in that motion, the Defendant possessed at his residence tens of thousands of pages of classified material, including over 1,000 pages of hard-copy TOP SECRET material. *Id.* at 2. Some of that material, as described in the Superseding Indictment, Dkt. 69, contains information related to foreign countries' nuclear and military capabilities, including the People's Republic of China ("PRC"). The Defendant possessed a significant amount of digitized classified documents, appeared to have extracted classified information from an electronic source, and appeared to have mixed classified and unclassified information into an unmarked document in his office for unknown purposes. Dkt. 33 at 2. It appears that the Defendant was brazenly stealing sensitive classified information from government workplaces for decades. Contrary to the Defendant's suggestion that he no longer has access to classified information, Dkt. 74 at 4 n.2, the Defendant retains the decades' worth of sensitive national defense information in his head. He also continues to have access to classified and national

---

[1] Defendant also mischaracterizes the bail conditions to suggest that they are so confining as to prevent him from participating in "constitutionally protected activities." Dkt. 74 at 5. That description is misleading and untrue. As Defendant notes, he may leave home detention for a variety of reasons, including to receive medical care, go to the grocery store, get haircuts, meet with counsel, attend religious services, and conduct other essential activities. *Id.* at 2, 5. Advance approval from pretrial services entails sending a request 48 hours in advance. The Government is unaware of any Constitutionally protected activities that the Defendant has not had the ability to participate in.

defense material pursuant to the Classified Information Procedures Act Section 3 Protective Order entered in this case to review classified discovery, including the documents charged in the Superseding Indictment and additional material. To add to the voluminous amount of sensitive information possessed by the Defendant, the Defendant met with government officials from the PRC and received token gifts from the PRC as recently as October 2025. *Id.* Also, as the Defendant has stated in earlier briefing, his job responsibilities included frequently meeting with government officials from all over the world. *See* Dkt. 14 at 11 ("Dr. Tellis' vocation entails frequent interactions with foreign officials, including diplomats from countries that are not U.S. allies.").

The danger to the community that information possessed by the Defendant will be disclosed and gravely damage the national security remains and would be exacerbated should the Defendant be allowed to travel anywhere within the D.C. metropolitan region from 8:00 a.m. to 8:00 p.m.[2] A curfew would allow the Defendant access to all of his foreign contacts in the D.C. region. It would allow him access to the entire world, as he could easily access the Internet in public settings or by using a contact's electronic devices to evade the stringent electronic monitoring that has been imposed as part of his release conditions to prevent him from disclosing national defense information. He could easily exchange the information that he has gathered and retained for decades for benefits to flee prosecution. Recognizing these risks, the Associate Director and Acting Director of the office that the Defendant worked in at the Department of War supported his detention. *See* Dkt. 33 at 14 & Ex. 3. In short, the risk of transmission of classified or sensitive information is exponentially higher if the Defendant is placed on curfew rather than home detention.

In addition, the Defendant's knowledge of decades' worth of extremely sensitive information

---

[2] The Government maintains that danger to the community is a sufficient basis for detention as articulated in the Government's Motion to Reopen. *See* Dkt. 33 at 9 (citing *Stewart*, 19 F. App'x at 48 ("For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." (citation omitted))).

continues to make him a flight risk. If he were allowed out on curfew, it would be much easier for the Defendant to seek refuge in a foreign embassy to flee prosecution and be out of reach of the United States judicial system. Even with GPS monitoring, those risks remain given the limitations of the physical GPS device. *See* Dkt. 33 at 17 & n.10. The Defendant took oaths to the United States to protect classified and national defense information. He signed multiple declarations vowing to protect the very information that was found openly sitting in plain sight in his home. The Defendant's actions and disregard for the promises he made to the United States make it impossible to reasonably assure that he will appear in this case and not endanger the community and others if he were allowed to travel freely in the nation's capital. *See id.* at 18.

For these reasons, the United States respectfully requests that the Court deny the Defendant's Motion to Modify Conditions of Release (Dkt. 74).

Respectfully submitted,

TODD W. BLANCHE                          JOHN A. EISENBERG
DEPUTY ATTORNEY GENERAL                  ASSISTANT ATTORNEY GENERAL
                                         NATIONAL SECURITY DIVISION

s/_____             s/_____
Seth Schlessinger                        Leslie C. Esbrook
Assistant U.S. Attorney                  Elizabeth Shults
United States Attorney's Office          Trial Attorneys
2100 Jamieson Avenue                     950 Pennsylvania Ave NW
Alexandria, Virginia 22314               Washington, DC 20530
(703) 299-3988                           (202) 616-3321
seth.schlessinger@usdoj.gov              leslie.esbrook@usdoj.gov
                                         elizabeth.shults@usdoj.gov

7

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

                                        /s/
                                        Leslie C. Esbrook
                                        Trial Attorney
                                        U.S. Department of Justice
                                        National Security Division
                                        950 Pennsylvania Ave NW
                                        Washington, DC 20530
                                        (202) 616-3321
                                        leslie.esbrook@usdoj.gov

8