**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:25-CR-00308-MSN |
| | ) | |
| ASHLEY J. TELLIS | ) | |
| | ) | |
| *Defendant.* | ) | |

**<u>GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS (Dkt. 76)</u>**

**TABLE OF CONTENTS**

I.   Background ........................................................................................................................2

II.  Legal Background ............................................................................................................2

III. Legal Standard .................................................................................................................3

IV.  Argument .........................................................................................................................4

    A.   The Superseding Indictment Adequately Alleges that the Defendant Had
        Unauthorized Possession of National Defense Information ............................................4

    B.   Unauthorized Possession Under 18 U.S.C. § 793(e) Applies to Possession by a
        Government Clearance Holder ........................................................................................7

        i.    Section 793(e) is Unambiguous that Retention of National Defense Information
            by a Government Clearance Holder Outside of Secure Facilities Constitutes
            Unauthorized Possession ........................................................................................7

        ii.   Review of the Statutory Context Does Not Alter That Conclusion..........................12

        iii.  Review of Section 793's Legislative History Does Not Alter That Conclusion .......15

    C.   18 U.S.C. § 1924 Criminalizes Distinct Conduct ..........................................................17

## TABLE OF AUTHORITIES

### Cases

*Boyce Motor Lines v. United States*, 342 U.S. 337 (1952) ............................................................ 3

*Caminetti v. United States*, 242 U.S. 470 (1917) .......................................................................... 4

*Erlenbaugh v. United States,* 409 U.S. 239 (1972) ...................................................................... 12

*Hamling v. United States,* 418 U.S. 87 (1974) ....................................................................... 3, 4, 5

*Lamie v. U.S. Tr.,* 540 U.S. 526 (2004) .......................................................................................... 4

*New York Times Co. v. United States*, 403 U.S. 713 (1971) ..................................................... 7, 16

*Pereira v. Sessions*, 585 U.S. 198 (2018) .................................................................................... 14

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) ............................................................ 18

*Ratzlaf v. United States*, 510 U.S. 135 (1994) ............................................................................. 12

*Rubin v. United States,* 449 U.S. 424 (1981) .......................................................................... 10, 17

*Russello v. United States*, 464 U.S. 16 (1983) ............................................................................. 17

*United States v. Bly,* 510 F.3d 453 (4th Cir.2007) ......................................................................... 4

*United States v. Broncheau*, 645 F.3d 676 (4th Cir. 2011) .......................................................... 12

*United States v. Drake*, 818 F. Supp. 2d 909 (D. Md. 2011) ......................................................... 8

*United States v. Glenn*, No. 14-cr-80031 (S.D. Fl. 2015) ............................................................ 19

*United States v. Hatcher*, 560 F.3d 222 (4th Cir. 2009) ..................................................... 4, 12, 15

*United States v. Hung*, 629 F.2d 908 (4th Cir. 1980) .................................................................... 9

*United States v. Lockhart,* 382 F.3d 447 (4th Cir. 2004) ............................................................... 3

*United States v. Martin*, 288 F. App'x 54 (4th Cir. Aug. 4, 2008) .............................................. 11

*United States v. Martin*, No. 17-cr-00069 (D. Md 2018-20) ........................................... 10, 11, 19

*United States v. McGuinness*, 33 M.J. 781 (Ct. Mil. Rev. 1991) ................................................. 17

*United States v. McGuinness*, 35 M.J. 149 (Ct. Mil. App. 1992 .................................................. 11

*United States v. Mehalba*, No. 03-cr-10343 (D. Mass. 2005) ...................................................... 19

*United States v. Mehalba*, 2003 WL 22361814 (D. Mass. Oct. 15, 2003) .................................. 19

*United States v. Morison*, 844 F.2d 1057 (4th Cir. 1988)............................................. 9, 10, 12, 17

*United States v. Murphy*, 35 F.3d 143 (4th Cir. 1994)...................................................................... 4

*United States v. Nirala*, No. 16-cr-00124 (E.D. Va. 2016)............................................................ 19

*United States v. Pho*, No. 17-cr-00631 (D. Md. 2017) ................................................................... 19

*United States v. Rosen*, 445 F. Supp. 2d 602 (E.D. Va. 2006) ...................................................... 14

*United States v. Schulte*, 578 F. Supp. 3d 596 (S.D.N.Y. 2021)................................................. 8, 11

*United States v. Serageldin*, No. 18-cr-10436 (D. Mass. 2019-20) .............................................. 19

*United States v. Steele*, 2011 WL 414992, (Army Ct. Crim. App. Feb. 3, 2011)................... 11, 15

*United States v. Sterling*, 860 F.3d 233 (4th Cir. 2017).............................................................. 8, 11

*United States v. Sterling*, No. 10-cr-00485 (E.D. Va. 2015) ...................................................... 6, 10

*United States v. Thomas*, 367 F.3d 194 (4th Cir. 2004).................................................................. 3

*United States v. Weaver,* 659 F.3d 353 (4th Cir. 2011) ................................................................... 4

*United States v. Wills*, 346 F.3d 476 (4th Cir. 2003).......................................................... 4, 5, 13

**Statutes**

18 U.S.C. § 1924.......................................................................................................................... 17, 18

18 U.S.C. § 793(e) ....................................................................................................................... *passim*

18 U.S.C. § 793(d) ....................................................................................................................... *passim*

18 U.S.C. § 793(f)............................................................................................................................ 15

40 Stat. 218 (1917)............................................................................................................................ 3

64 Stat. 1004 (1950).......................................................................................................................... 3

Pub. L. 103-359, 108 Stat. 3453 (Oct. 14, 1994)…………………………………………………...18

Pub. L. 115-118, § 202, 132 Stat. 3, 19 (Jan. 19, 2018)……………………………………………18

**Other Authorities**

1 Modern Fed. Jury Instr. § 29.04.................................................................................................... 11

96 Cong. Rec. 14178, 81st Cong., 2d Sess. (1950)..........................................................................16

H.R. Rep. No. 647, 81st Cong., 1st Sess. (1949)....................................................................16, 17

Merriam-Webster Dictionary, Merriam Webster, https://www.merriam-webster.com/
    thesaurus/unauthorized (last accessed Mar. 12, 2026).................................................................7

S. Rep. No. 2369, pt. 1, 81st Cong., 2d Sess. (1950).....................................................................16

The Superseding Indictment in this case alleges that, for nearly 24 years, beginning no earlier than in or about 2001 and continuing through October 11, 2025, the defendant, Ashley Tellis, stole national defense information from U.S. government property while serving as an employee of the U.S. Department of State and U.S. Department of War (formerly Defense), and retained that information at his residence. *See generally* Dkt. 69. The Defendant held a TOP SECRET / Sensitive Compartmented Information security clearance authorizing him to access classified national security information in secure facilities. In contravention of this authorization and the trust placed in him by the Government, the Defendant stole and retained national defense information in an unsecure location, for decades, without authorization. For these actions, the Superseding Indictment charges the Defendant with eleven counts of willful retention in violation of 18 U.S.C. § 793(e), which prohibits "unauthorized possession of, access to, or control over any document . . . relating to the national defense" and "willfully retain[ing] the same and fail[ing] to deliver it to the officer or employee of the United States entitled to receive it."

The Defendant has moved to dismiss the Superseding Indictment on the grounds that he did not have "unauthorized possession of" the charged documents that he secreted out of government buildings and brought to his home. He looks to use of the term "entrusted" in the Superseding Indictment to argue that he may only be prosecuted under Section 793(d) of the statute, which criminalizes willful retention by an individual "lawfully having possession of" or "being entrusted with" any document relating to the national defense and failing to deliver it "on demand," or under 18 U.S.C. § 1924. The Defendant's challenge misreads the Superseding Indictment and overlooks the standard to dismiss on a Rule 12(b) motion. It also contravenes a plain text reading of Section 793(e) and is unsupported by the statute's context or legislative history. For these reasons, the motion to dismiss the Superseding Indictment should be denied.

1

## I.     Background

As stated in the Superseding Indictment, the Defendant "held a security clearance that authorized him to view classified material up to the TOP SECRET / Sensitive Compartmented Information (SCI) level and had access to national defense and classified information" as an employee of the Department of State and the Department of War.  Dkt. 69 ¶ 2.  While holding a security clearance, the Defendant received training on the "proper handling, marking, transportation, and storage of classified materials," and on "the nature and protection of SCI." *Id.* ¶ 11.   The Defendant "knew that the unauthorized removal of classified materials and transportation and storage of those materials in unauthorized locations risked disclosure and transmission of those materials, and therefore could endanger the national security of the United States and the safety of its citizens." *Id.*  He further "knew that he was not authorized to remove National Defense Information and classified documents from secure locations," and "that he was not authorized to retain them at his residence." *Id.* ¶ 17.

Despite this, the Defendant "removed without authorization and retained U.S. government property," including eleven documents with TOP SECRET and SECRET markings containing national defense information, and "retained stolen documents, in hard copy and digital form, . . . in a number of locations within his residence." *Id.* ¶¶ 13-14.  The documents contained information related to foreign countries' military and nuclear capabilities, including the People's Republic of China, and assessment of potential vulnerabilities to a U.S. military facility. *Id.* ¶¶ 18-21.

## II.     Legal Background

18 U.S.C. § 793(e) states in full:

> Whoever having *unauthorized possession of*, access to, or control over any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, or information relating to the national defense which information the

2

> possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it, *or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it*; . . . Shall be fined under this title or imprisoned not more than ten years, or both.

(emphasis added).

Section 793(e) was enacted into law as part of Title I of the Internal Security Act of 1950. *See* 64 Stat. 1003-04 (1950). Previously, Section 1(d) of the Espionage Act punished, *inter alia*, "whoever, lawfully or unlawfully having possession of, access to, control over, or being intrusted with any document . . . willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it . . . ."  40 Stat. 218 (1917).  The term "unlawfully" was removed from Section 1(d) and the remainder of the text became Section 793(d) of Title 18 of the United States Code.  *See* 64 Stat. 1004 (1950).

## III.    Legal Standard

Federal Rule of Criminal Procedure 12(b) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." On a motion to dismiss an indictment, "the allegations of the indictment must be taken as true." *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952); *see United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the [offense] intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (internal quotation omitted); *accord United States v. Lockhart,* 382 F.3d 447, 449 (4th Cir. 2004).  Any general

3

description based on the statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific [offense], coming under the general description, with which he is charged." *Hamling,* 418 U.S. at 117–18 (internal quotations omitted). If the indictment meets this standard, it is "valid on its face," and the court may not "review the sufficiency of the evidence" supporting the indictment. *United States v. Wills*, 346 F.3d 476, 488-89 (4th Cir. 2003).

A district court may also consider a "purely legal" question of statutory interpretation on a motion to dismiss. *United States v. Weaver*, 659 F.3d 353, 355 n.1 (4th Cir. 2011); *see United States v. Hatcher*, 560 F.3d 222, 224 (4th Cir. 2009). Questions of statutory interpretation begin with "the language of the statute itself." *United States v. Bly,* 510 F.3d 453, 460 (4th Cir. 2007). "[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." *Lamie v. U.S. Tr.,* 540 U.S. 526, 534 (2004) (internal quotations omitted); *see United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994) (when language is "facially clear and 'within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms'" (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). Only in "exceptionally rare" circumstances where application of the statute "is demonstrably at odds with clearly expressed congressional intent" or would produce "an outcome that can truly be characterized as absurd" would a court depart from this rule. *Hatcher*, 560 F.3d at 226 (internal quotations omitted).

## IV. Argument

### A. The Superseding Indictment Adequately Alleges that the Defendant Had Unauthorized Possession of National Defense Information

The Defendant argues that the Superseding Indictment fails to allege that he had "unauthorized possession" of national defense information but instead alleges that he was an

4

"authorized possessor." Dkt. 76 at 6. That argument is based on a misreading of the Superseding Indictment and ignores the standards governing a motion to dismiss. The Superseding Indictment properly alleges all necessary elements of a Section 793(e) offense, which is all that is required at this stage.

Counts 1 through 11 allege that the Defendant

> having unauthorized possession of, access to, and control over documents relating to the national defense, willfully retained the documents and failed to deliver them to any officer or employee of the United States entitled to receive them: to wit, TELLIS retained documents relating to the national defense at his residence without authorization, including the documents described [] above, and listed below . . . .

Dkt. 69 ¶ 21. Those allegations, which must be taken as true for a motion to dismiss, track the language of Section 793(e), set forth the essential elements of the offense, and provide a factual description sufficient to "inform the accused of the specific [offense]" with which he has been charged. *Hamling,* 418 U.S. at 117–18. Therefore, the Superseding Indictment is facially valid and not subject to dismissal. *See Wills*, 346 F.3d at 488-89.

The Defendant asserts that the Superseding Indictment states that he was an "authorized possessor." Dkt. 76 at 6. The term "authorized possessor" is not found anywhere in Section 793 – let alone the Superseding Indictment. The Defendant looks to paragraph 2 of the Superseding Indictment, which states that the Defendant "held a security clearance that authorized him to view classified material and had access to national defense and classified information," and to paragraph 10, which states that the government "entrusted [the Defendant] with access to sensitive government materials." Those general statements about the Defendant's ability to *access* or *view* classified or national defense information in secure governmental facilities do not change the fact that he was not authorized to *possess at his residence* the specific documents that he is alleged to

have willfully retained in violation of the law.  Paragraph 10 alleges nothing about the Defendant "being entrusted with" the documents containing national defense information that he has been charged with, and the Government has not "concede[d] entrustment." Dkt. 76 at 10.  Neither paragraph 2 nor 10 speak to possession at all, using instead the terms entrustment to "access" and authorization to "view" sensitive material.  *See* Dkt. 69 ¶¶ 2, 10.[1]

In other words, the Superseding Indictment simply does not allege that the Defendant was "entrusted" as that term is used in Section 793(d).  This alone is fatal to the Defendant's motion which, having declined to identify any flaw or omission in the language charging violations of Section 793(e), is entirely dependent on the contention that the indictment *also* alleges that the Defendant falls within the category of persons "entrusted" under Section 793(d).  In fact, the Superseding Indictment alleges no such thing.  To be sure, in its general allegations, the Superseding Indictment uses the term "entrusted" to describe the defendant's access to national defense information.  But that is not the same as an allegation of "entrustment" *as an element of a Section 793(d) offense* (which, of course, is not charged in the Superseding Indictment), and it is therefore incapable of undermining the sufficient allegations for Section 793(e) violations.

Finally, to the extent the Defendant is making a factual assertion that he was not "unauthorized" to possess the documents, the allegations of the indictment—which plainly state

---

[1] The Defendant also states that the Government does not allege that the Defendant possessed documents without the appropriate security clearance or for which he did not have a need to know. Dkt. 76 at 6.  Those are separate grounds under which he may have unauthorized possession over material. *See United States v. Sterling*, No. 10-cr-485, Dkt. 493, at 1541 (E.D. Va. Aug. 17, 2015) (instructing jury that "unauthorized" possession means possession by a person who (1) does not hold a security clearance; (2) holds a security clearance without the need to know; or (3) holds a security clearance, has a need to know, but removed the classified information from the official premise without authorization).  The Government has stated that the Defendant held a security clearance but has not made any representations about the Defendant's need to know. Nevertheless, the Defendant's unauthorized possession does not turn on either of these distinctions.

that he did not have authorization to possess classified national defense information at his residence—must be taken as true on a motion to dismiss. The Defendant's parsing of the Superseding Indictment falls short.

### B. Unauthorized Possession Under 18 U.S.C. § 793(e) Applies to Possession by a Government Clearance Holder

#### i. Section 793(e) is Unambiguous that Retention of National Defense Information by a Government Clearance Holder Outside of Secure Facilities Constitutes Unauthorized Possession

Because the Superseding Indictment sufficiently alleges the elements of Section 793(e) offenses, the Defendant's motion should be denied without the need for statutory review. Should the Court interpret the text of Section 793, though, the Defendant's arguments fail twice over. The Defendant contends that the term "unauthorized" in Section 793(e) cannot apply to individuals who are "entrusted with" national defense information. Dkt. 76 at 4. The Government understands the argument to be that a clearance holder who can access national defense information cannot be an "unauthorized" person. But holding a government clearance does not transform an individual into someone who has "[been] entrusted with" national defense information at his personal residence. Such a claim does not make sense and is unsupported by a facial read of Section 793(e).

Section 793(e) prohibits willful retention by anyone having "unauthorized possession" of certain materials—without further qualification. "Unauthorized" simply means "without authority or permission." Merriam-Webster Dictionary, Merriam Webster, https://www.merriam-webster.com/thesaurus/unauthorized (last accessed Mar. 12, 2026). Section 793(e) is expansive and not limited to a particular class of individuals or employees. *See New York Times Co. v. United States*, 403 U.S. 713, 737 (1971) (White, J., concurring) (describing Section 793(e) as "casting a wider net to protect the national defense"). It has no

7

geographic limits.  It has no reference to the requirements of other laws, or condition that the possession must be "unauthorized by law."  In other words, it prohibits *any* unauthorized possession of national defense information by *any* individual, government employee or otherwise.

That lack of authorization can come in myriad forms:  it can mean the individual does not have authorization to possess *any* national defense information; the *specific* national defense information at issue; or national defense information at a *particular place*, at a *particular time*, or in a *particular manner*.[2]  *See, e.g.*, *United States v. Drake*, 818 F. Supp. 2d 909, 921 (D. Md. 2011) ("Section 793(e) as applied in this case [] prohibits [the defendant] from bringing home classified documents relating to the national defense"); *see also United States v. Schulte*, 578 F. Supp. 3d 596, 616 (S.D.N.Y. 2021) (holding jury could find evidence of "unauthorized possession" because "[t]here is no dispute that [the defendant] was not authorized to possess classified information at [a jail]"; citing *United States v. Sterling*, 860 F.3d 233, 242 (4th Cir. 2017) for the proposition that "keeping classified information at a defendant's home [was] sufficient to support conviction under § 793").  The plain text of Section 793(e) unambiguously includes unauthorized possession of *any* sort, by *any* individual (clearance holder or otherwise).

The Defendant's repeated insistence that Section 793 distinguishes among categories of persons rather than categories of conduct is flatly contrary to the plain text of the statute. Section 793(e) refers to "unauthorized possession," a phrase in which "unauthorized"

---

[2] Indeed, as stated in the Superseding Indictment, the Defendant received training and security briefing on storage of classified materials, and knew that "unauthorized removal of classified materials and transportation and storage of those materials in unauthorized locations risked disclosure and transmission of those materials, and therefore could endanger the national security . . . ." Dkt. 69 ¶ 11.

immediately precedes and therefore indisputably modifies "possession."  And possession by any person – including a clearance holder – no doubt may be unauthorized, whether because of the status of the document or materials, or the circumstances under which the document or materials are transmitted or retained.

"Unauthorized possession" of items by a person who is also "entrusted" to possess them under markedly different circumstances is hardly a novel or complicated concept. Attorneys are entrusted to hold client funds in trust accounts but are not authorized to possess them in their personal bank accounts.  Military personnel are entrusted to possess weapons of war during their service that they are not authorized to possess while on leave from duty.  A parking valet is entrusted with possession of a car to take it to and from a parking space, but is not authorized to take the car home and drive it indefinitely in the future.  The point is simply that there is no conflict between being "entrusted" with possession of an item under defined and limited circumstances and being in "unauthorized possession" of the same item outside the permitted circumstances.  Ultimately, because the term "unauthorized possession" is unambiguous "in light of ordinary principles of statutory interpretation" and will not produce "absurd results" or "thwart the obvious purpose of the statute," the Court's "inquiry is complete.  *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988); *see id.* at 1063 n.6 (holding that the text of Section 793(e) is "clear and unambiguous").[3]  Moreover, because "the

---

[3] *United States v. Hung*'s dicta that the term unauthorized possession is a "possible ambiguity" does not control this Court's review.  *See* 629 F.2d 908, 919 n.10 (4th Cir. 1980).

terms of this statute are unambiguous on their face," the rule of lenity does not apply.  *Id.* at 1064 & n.6 (citing *Rubin v. United States,* 449 U.S. 424, 430 (1981)).

The Fourth Circuit and trial courts within the Circuit have repeatedly reaffirmed that government clearance holders may be criminally prosecuted under Section 793(e) for "unauthorized possession" if they remove national defense information from secure areas. *United States v. Morison*, 844 F.2d 1057 (4th Cir. 1988), is instructive.  In *Morison*, an employee at the Naval Intelligence Support Center ("NISC") was charged with one count of violating Section 793(e) for retaining two secret NISC intelligence reports at his apartment (he was also charged with one count of violating Section 793(d) for a separate act of transmitting national defense materials).  The case proceeded to trial, and the court instructed the jury that "[a]n individual has unauthorized possession of documents and writings when he possesses those under circumstances *or in a location* which is contrary to law or regulations for the conditions of his employment."  Trial Tr., *United States v. Morison*, Crim. No. Y-84-00455, at 12 (D. Md. 1985) (attached as Exhibit 1 to Dkt. 91 in *United States v. Martin*, No. 17-cr-00069 (D. Md Mar. 3, 2018)) (emphasis added).  The jury convicted Morison on all counts, and Morison appealed.  On appeal, the Fourth Circuit upheld the defendant's conviction, holding that any claim of error was "unfounded."  844 F.2d at 1060.  In reviewing the text of Sections 793(d) and (e), the Circuit held that both sub-sections "cover[] 'anyone,'" and that "[i]t is difficult to conceive of any language more definite and clear."  *Id.* at 1063.

For decades, other district courts in this Circuit have followed suit.  *See, e.g.*, *United States v. Sterling*, No. 10-cr-00485, Dkt. 493, at 1541 (E.D. Va. Aug. 17, 2015) (instructing the jury that "unauthorized possession" includes possession by an individual who "holds a security clearance, has a need to know, but removed the classified information from the official

premise without authorization"), *aff'd in relevant part*, 860 F.3d 233 (4th Cir. 2017); Final Jury Instructions, *United States v. Ford*, No. 05-cr-00235 (D. Md.) (attached as Exhibit 1 to *United States v. Martin*, No. 17-cr-00069, Dkt. 88 (D. Md. Feb. 23, 2018)) (same instruction), *aff'd*, 288 F. App'x 54 (Aug. 4, 2008); *see also* 1 Modern Fed. Jury Instr. § 29.04 (commentary stating that Section 793(e) applies where "[t]here was no evidence that the defendant had lawfully possessed the classified document *at his home*"); *Martin*, No. 17-cr-00069, Dkt. 222, at 60 (D. Md. Aug. 6, 2020) (stating at sentencing for a plea to violating Section 793(e) that, "[t]he first time that information went out from NSA, and you took that information home, you crossed a major boundary and major border, and entered into very dangerous territory").

So, too, have courts outside of the Fourth Circuit. *See, e.g.*, *Schulte*, 578 F. Supp. 3d at 614, 616 (denying Rule 29 motion challenging unlawful possession by a clearance holder where evidence was sufficient to allow juror to conclude that the defendant, while employed as a government clearance holder, "copied and had unlawful access to, or control over, the stolen [national defense information]"); *United States v. Steele*, ARMY 20071177, 2011 WL 414992, at *3 (Army Ct. Crim. App. Feb. 3, 2011) (upholding conviction in military court of officer who "had neither sought nor received authorization to retain or possess classified information in his [containerized housing unit]" and "ke[pt] an enormous collection of such sensitive material in papers, computer hard drives and CDs unsecured" therein); *United States v. McGuinness*, 35 M.J. 149, 153 (Ct. Mil. App. 1992) (stating that conduct "clearly was 'unauthorized'" under Section 793(e) where a servicemember "knew that he had no authority to retain [NDI] materials and store them in his home"). Consistent precedent recognizes that "unauthorized possession" unambiguously applies to removal and retention of national defense information from a secure location.

11

### ii.    Review of the Statutory Context Does Not Alter That Conclusion

Even if the Court finds the terms of Section 793(e) to be ambiguous, the context and legislative history support the Government's construction. If a court determines the plain text of a statute is ambiguous, it is "permitted to consider other evidence to interpret the meaning of the provision, including the legislative history and the provision's heading or title." *Hatcher*, 560 F.3d at 226 (citing *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994)). When ambiguous language of a statute is a part of a larger Act, "the starting point for ascertaining legislative intent is to look to other sections of the Act *in pari materia* with the statute under review." *Morison*, 844 F.2d at 1064 (citing *Erlenbaugh v. United States,* 409 U.S. 239, 244–47 (1972)); *see also United States v. Broncheau*, 645 F.3d 676, 685 (4th Cir. 2011) (stating that "adjacent statutory subsections that refer to the same subject matter should be read harmoniously" (internal quotations omitted)).

The Defendant primarily reasons that because Section 793(d) criminalizes retention by those "being entrusted with" or "lawfully having possession" of national defense information, Section 793(e) must be read to mean something different. Dkt. 76 at 4. And it does, by prohibiting a markedly different category of possession (that which is unauthorized). If an individual retained national defense information in a secure facility pursuant to a non-disclosure agreement and was asked but willfully failed to return the information, Section 793(d) may apply. If a courier or another who was entrusted with national defense information did not deliver the documents as required and was asked to return them but willfully did not, Section 793(d) may apply. Willfully removing and retaining national defense information at one's home without any authorization is neither lawful possession nor entrustment.

The Defendant appears to recognize that a government clearance does not make storage of TOP SECRET national defense information at one's home *ipso facto* "lawful possession,"

12

as he makes no argument that he was in "lawful possession" of the materials. By this very admission, however, the Defendant concedes that Section 793(e) does not shield a government clearance holder from exposure to "unauthorized possession" of national defense information. Instead, the Defendant argues that he was "entrusted with" the materials. Dkt. 76 at 8. As explained above, the Superseding Indictment does *not* allege that the Defendant was entrusted with storing national defense materials at his residence—and he decidedly was not. In fact, the Superseding Indictment specifically states that the U.S. government "entrusted TELLIS with access to sensitive government materials" "*[b]ecause TELLIS held a security clearance . . . .*" Dkt. 69 ¶ 10 (emphasis added). In other words, it repeats that the Defendant held a security clearance and does no independent work to distinguish entrustment from "lawful possession." The Defendant's own interpretation of entrustment as used in the Superseding Indictment would violate the canon against surplusage.

The Defendant next suggests that "being entrusted with" material "makes perfect sense" in "a situation such as ours"; *i.e.*, a government clearance holder stealing national defense information and retaining it in an unsecure location. Dkt. 76 at 9. The Defendant offers no explanation for his read of "being entrusted with." And again, to the extent he asks the Court to make factual determinations that he did not in fact have unauthorized possession because he was entrusted with the eleven documents charged in the Superseding Indictment, he cannot do so on a motion to dismiss. *Wills*, 346 F.3d at 488-89. "Being entrusted with" may apply to couriers transiting classified material from one location to another, for example, or other unique situations involving handling and storage of classified material beyond the terms of access by a clearance holder in a secure facility. Such a read accounts for the canon against surplusage and differentiates entrustment from "lawful possession." However, it is

13

implausible to read "being entrusted with" in the manner that the Defendant suggests, which would require an individual to *entrust himself* with national defense information held in an unknown, unsecure location for an indefinite length of time.[4] "[C]ommon sense compels the conclusion" that "being entrusted with" does not apply to such a scenario. *Pereira v. Sessions*, 585 U.S. 198, 211 (2018).

Reading "being entrusted with" to require the Government to know about the entrustment makes sense given the "on demand" language in Section 793(d). For an individual to "fail[] to deliver [material] on demand to the officer or employee of the United States entitled to receive it" as required by Section 793(d), the individual or organization making the demand must have awareness that the material is entrusted to another. The Defendant's interpretation of Sections 793(d) and (e) would leave an incomprehensible gap in the statute, allowing clearance holders who would otherwise be entitled to possess or review national defense information to remove it from government facilities and use it indefinitely for anything short of transmission without consequence unless and until the government demanded return of the material. In such a scenario, the Government would likely be unaware of the material's removal and retention and would have no reason to make a demand for its return. If "being entrusted with" national defense materials extended to storage and handling in unsecure places by clearance holders, without anyone in the Government other than the individual who absconded with the material knowing of its location, there could never be a "demand" made

---

[4] The Defendant briefly alludes to "information retained only in memory" as an example of classified information that is entrusted to clearance holders to safeguard outside of physically secure locations. *See* Dkt. 76 at 10. Intangible "information," however, is accounted for in both Sections 793(d) and (e), and therefore cannot inform the meaning of the term "being entrusted with." *See, e.g.*, *United States v. Rosen*, 445 F. Supp. 2d 602, 617 (E.D. Va. 2006) (holding that the term "information" in 793(d) and (e) "applies both to tangible and intangible information").

14

for the materials' return. *See Steele*, 2011 WL 414992, at *3 ("Logically, because § 793(e) addresses unauthorized possession (where officials would not reasonably know about the possession), no demand for return is required.").

Finally, the Government's interpretation of "unauthorized possession" in Section 793(e) does not render Section 793(f) superfluous, as the Defendant argues. Dkt. 76 at 11. Section 793(f) prohibits individuals being entrusted with or having lawful possession of national defense materials from, "(1) through gross negligence permit[ting] the same to be removed from its proper place of custody or delivered to anyone in violation of his trust . . ."; or "(2) having knowledge that the same has been illegally removed from its proper place of custody or delivered to anyone in violation of its trust . . . and failing to make prompt report" to a superior officer. The Defendant's argument for why this provision would be rendered meaningless is unclear. By its plain terms, Section 793(f) is concerned with gross negligence, or knowledge—activity with lower *mens rea* elements—related to removal and reporting requirements. Section 793(f) does not use the term "retain" or any variation of retention, which is the crux of Section 793(e). In sum, the context of the statute supports the conclusion that the term "unauthorized possession" in Section 793(e) applies to willful removal and retention of materials by a clearance holder.

### iii. Review of Section 793's Legislative History Does Not Alter That Conclusion

The legislative history of Section 793 further supports the Government's read of the statute. *See Hatcher*, 560 F.3d at 226 (reviewing legislative history "[o]nly if we determine that the terms of a statutory provision are ambiguous"). The legislative history confirms that Section 793(e) was

intended to broaden the scope of criminal conduct covered by the Espionage Act, including retention by clearance holders.

In amending Title 18 to include Section 793(e), the House stated that "serious gaps in our present laws permit people, both citizens and aliens alike, opportunities to acquire information vital to our national security and to use that information to the disadvantage and danger of the United States without fear of prosecution in our courts." H.R. Rep. No. 647, 81st Cong., 1st Sess., at 2-3 (1949). This suggests a deliberate choice to revise the statute from the conduct previously criminalized, "lawful or unlawful possession" where a demand was made for retention and not complied with, to something much broader.

One member of Congress stated that the law required "remedial attention" because "[t]he inadequacy of [Section 793's demand requirement] is self-evident, since by the very nature of things an unauthorized possession would most likely not be known to those entitled to receive the restricted enumerated items." 96 Cong. Rec. 14178, 81st Cong., 2d Sess. (1950). The Senate, in its review of proposed Section 793(e), echoed this sentiment, stating that

> [e]xisting law provides no penalty for the unauthorized possession of such items unless a demand for them is made by the person entitled to receive them. The dangers surrounding the unauthorized possession of the items enumerated in this statute are self-evident, and it is deemed advisable to require their surrender in such a case, regardless of demand, especially since *their unauthorized possession may be unknown to the authorities who would otherwise make the demand.*

S. Rep. No. 2369, pt. 1, 81st Cong., 2d Sess., at 9 (1950) (emphasis added). In other words, Congress intended to penalize *all* forms of unauthorized possession of national defense information, regardless of the status of the individual who possessed the material. *See New York Times*, 403 U.S. at 737-39 & n.9 (1971) (White, J., concurring) (reviewing the legislative history of Section 793(e) and finding that the subsection was added "because pre-existing law provided

no penalty for the unauthorized possessor unless demand for the documents was made").

The House also stated that "the term 'unauthorized possession' is used deliberately in preference to 'unlawful possession,' so as to preclude the necessity for proof of illegal possession." H.R. Rep. No. 647, 81st Cong., 1st Sess., at 4 (1949). Again, Congress did not intend to tie the requirements of Section 793(e) to proof of lawfulness or overly burden the inquiry; Congress intended Section 793(e) to broadly apply to *any* form of unauthorized possession by *any* individual. Any other read of the statute "would thwart the Congressional intent and purpose behind subsection (e)." *United States v. McGuinness*, 33 M.J. 781, 786 (Ct. Mil. Rev. 1991); *see id.* (reviewing legislative history in support of holding that "appellant's initial authorized possession of the classified materials became unauthorized when he exceeded the parameters of the entrustment given to him"). Review of legislative history compels the conclusion that "unauthorized possession" includes possession that exceeds the bounds of a government clearance.[5]

### C. 18 U.S.C. § 1924 Criminalizes Distinct Conduct

The Defendant also incorrectly suggests that Congress intended to address unauthorized removal and retention by a federal employee solely pursuant to 18 U.S.C. § 1924. *See* Dkt. 76 at 12-13. As a matter of statutory interpretation, the text of 18 U.S.C. § 1924 is not grounds for analysis of 18 U.S.C. § 793(e). The difference in statutory texts is relevant when "Congress includes particular language in one section of a statute *but omits it in another section of the same Act.*" *Russello v. United States*, 464 U.S. 16, 23 (1983) (emphasis added; internal quotation omitted). Section 1924 was added to the United States Code in 1994 as a

---

[5] And again, because "the terms of this statute are unambiguous . . . in light of ordinary principles of statutory interpretation," the rule of lenity does not apply. *Morison*, 844 F.2d at 1064 & n.6 (citing *Rubin,* 449 U.S. at 430).

misdemeanor and became a felony in 2018. *See* Pub. L. 103-359, 108 Stat. 3453 (Oct. 14, 1994); Pub. L. 115-118, § 202, 132 Stat. 3, 19 (Jan. 19, 2018). It was codified nearly 45 years *after* the passage of Section 793(e) and did not alter the text of Section 793 or the Espionage Act in any way. Moreover, the Defendant cannot and does not make any argument that Section 1924, as a later statute, impliedly repealed Section 793(e). *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) (discussing the later in time canon of construction).

Even more fundamentally, Section 1924 plainly criminalizes distinct conduct from the conduct criminalized under Section 793(e). Section 1924 prohibits "knowing" removal of documents or materials, a lesser *mens rea* standard than the willful retention required for Section 793(e). 18 U.S.C. § 1924. Section 1924 also prohibits removal of materials "containing classified information of the United States." *Id*. Classified material and material "relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation," the grounds for prosecution of willful retention pursuant to Section 793(e), are distinct categories of information—a distinction that the Defendant himself has taken pains to emphasize in this case. For these reasons, the Defendant's accusations of Government "overreach in charging" and an alleged "calculated decision" to charge Section 793 miss the mark.

Finally, the Defendant cites two cases as comparable instances where federal employees have pleaded guilty to violations of Section 1924. *See* Dkt. 76 at 13. Setting aside the significant factual distinctions between those cases and the case at bar, the Defendant's selective case citations overlook the multiple other cases involving federal clearance holders that have been resolved by plea under Section 793(e) for willful retention of national defense information at the defendant's residence. *See, e.g.*, *United States v. Martin*, No. 17-cr-00069,

18

Dkt. 204 at 13 (D. Md. 2019) (U.S. government servicemember and contractor stole "vast quantity" of documents that "spanned two decades" and retained them in his vehicle and residence); *United States v. Serageldin*, No. 18-cr-10436, Dkts. 1, 61, 72 (D. Mass. 2019-20) (defense contractor with clearance illegally retained 3,000 pages of documents with classification markings in his home, car, and on his person); *United States v. Pho*, No. 17-cr-00631, Dkt. 9 (D. Md. 2017) (clearance holder at National Security Agency removed TOP SECRET documents and stored them in his home); *United States v. Nirala*, No. 16-cr-00124, Dkt. 63, 64 (E.D. Va. 2016) (employee at National Geospatial-Intelligence Agency retained a TOP SECRET document at his residence); *United States v. Glenn*, No. 14-cr-80031, Dkt. 101 (S.D. Fl. 2015) (government contractor stole classified files and stored them at his residence); *United States v. Mehalba*, No. 03-cr-10343, Dkt. 94 (D. Mass. 2005); *id.*, 2003 WL 22361814, at *1-2 (D. Mass. Oct. 15, 2003) (government contractor stole a compact disc containing national defense information).

19

For these reasons, the United States respectfully requests that the Court deny the Defendant's Motion to Dismiss (Dkt. 76).


Respectfully submitted,


TODD W. BLANCHE                          JOHN A. EISENBERG
DEPUTY ATTORNEY GENERAL                  ASSISTANT ATTORNEY GENERAL
                                         NATIONAL SECURITY DIVISION




s/_____        s/_____
Seth Schlessinger                        Leslie C. Esbrook
Assistant U.S. Attorney                  Elizabeth Shults
United States Attorney's Office          Trial Attorneys
2100 Jamieson Avenue                     950 Pennsylvania Ave NW
Alexandria, Virginia 22314               Washington, DC 20530
(703) 299-3988                           (202) 616-3321
seth.schlessinger@usdoj.gov              leslie.esbrook@usdoj.gov
                                         elizabeth.shults@usdoj.gov

20

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

/s/

Leslie C. Esbrook
Trial Attorney
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave NW
Washington, DC 20530
(202) 616-3321
leslie.esbrook@usdoj.gov

21